# CHARLESTON.

## STATE v. JIM BUD MULLETT.

Submitted October 30, 1923. Decided November 6, 1923.

BURGLARY—*Evidence Held Insufficient to Sustain Conviction.*
  Where the only evidence adduced to support the charge that defendant entered a store building with intent to steal is that six months after the robbery, part of the stolen goods were found in his possession and part in the possession of his father who lived nearby, a verdict finding defendant guilty as charged must be set aside as without proof to support it. .

Error to Circuit Court, Wayne County.

Jim Bud Mullett was convicted of burglary, and he brings error. Judgment reversed, verdict set aside, and defendant awarded a new trial.

*Darnall & Lovins* and *C. E. Copen,* for plaintiff in error.
*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

MEREDITH, JUDGE:

Defendant was indicted upon two counts: first, that he did unlawfully and feloniously break and enter a certain store building, belonging to J. B. Crum and Henry Copley, with intent to steal, take and carry away certain goods and chattels therein belonging to the said Crum and Copley, and that he did unlawfully and feloniously steal, take and carry away 24 yards of calico, of the value of $2.64; eight pairs of shoes, of the value of $32.00; and one lot of khaki pants, of the value of $21.00; the property of Crum and Copley, partners, against the peace and dignity of the state. The second count is like the first except that it omits the element of "breaking" in connection with the entering of the store. Upon a verdict of "Guilty as charged in the second count of the within indictment," but not guilty as charged in the first count, defendant was sentenced to serve two years in the penitentiary, and he brings error.

But one instruction was given for the state, and it is not objected to here. Neither does defendant specify any errors relative to the admission or rejection of testimony. The case, therefore, must turn upon the general assignment that the verdict is contrary to the law and the evidence.

The evidence for the state consists of the testimony of J. B. Crum, the alleged part owner of the store goods, W. B. Copley, a deputy sheriff, and John B. Lowe and Roxie Stepp, neighbors of defendant. It is shown that on the night of July 10, 1921, the store building described in the indictment was entered through the back door, which seems to have been forced, and a quantity of shoes, pants, calico, suspenders and scissors, estimated to be worth from $50.00 to $60.00, were stolen therefrom. About six months later, in the late fall of 1921, having been informed that the stolen goods were in the possession of defendant, who lived in Martin County, Kentucky, two miles distant from the scene of the robbery, J. B. Crum with a number of officers, and armed, it is claimed, with a search warrant, searched the premises not only of defendant, but those of his father and of his father-in-law, who resided nearby. As we interpret the uncertain testimony of Crum and Copley, they found at the home of the

defendant a quantity of calico, some of it made up into dresses. They may also have found a few belts, but Crum did not claim them. The calico was found in a grip, said by Crum to have been setting near the door, but by officer Copley to have been hid under the bed. They may, however, have been referring to different grips and premises. Some of the dresses were hanging on the wall, others were in a wash tub in defendant's house. At the home of defendant's father they found some khaki pants. Though it was admitted that calico and khaki pants were handled generally in the stores in the vicinity, Crum claimed to be able to identify the pattern of the calico and the pants as part of the missing goods. He fixed the value of the recovered articles at the time of the trial at $5.00.

Other calico, apparently all made up into clothing, was found in the possession of Roxie Stepp. Crum attempted to identify it as part of the material taken from the store. Her explanation of her possession of the calico is that it was given to her by defendant. No reason for the gift is given except that while she was engaged in hunting for mint for her baby sister, defendant volunteered to ferry her across the river, assisted in finding the mint, and drew the calico from a hollow tree where it was hid and presented it to her. The date of this occurrence was fixed by her as having been in the fall or summer not more than two years prior to the trial. The case was tried February 13, 1923.

The gist of Lowe's testimony is that on the evening of the last Friday in January, 1922, defendant and four others came to his home with two or three suit-cases, containing some calico. One of the party said something about Lafayette Salmon's store; another remarked that "John Slick Crum has the prettiest goods." Lowe, as a witness, did not in any degree identify the goods exhibited at the trial as being part of the same goods which were brought to his home, and we see little relevancy in his testimony.

An additional circumstance adduced in the testimony as tending to prove defendant's guilt is shown by the following statements of witness Crum:

"I was coming down the road, myself and my wife

and Sherman Salmons, and Sherman says, 'Lookout, Jim Bud is over there.' I come riding ahead, says, 'Come on,' went riding down the road. I looked and seen him across the mouth of Jenny's Creek with a gun. He says, 'Hey, there.' I says, 'Who is it?' He says, 'Jim Bud Mullett.' I says, 'What do you want?' He says, 'I want them goods you came to my house and got.' I says, 'What, them you stole from me?' He says, 'Yes.' He says, 'I am going to shoot.' I . says, 'Go ahead and shoot.'

This incident is supposed to have occurred some time prior to defendant's arrest, and Crum states that defendant was armed with a high-power gun at the time.

The defense consists of defendant's absolute denials of any connection with the offense charged. He claims to have purchased the calico from his deceased uncle, Jim Mullett, for the sum of $14.00. The uncle had purchased it from Sears-Roebuck Company. The gift of part of it to the witness Roxie Stepp was in consideration of mutual friendship of several years standing. He states that the goods were kept in a grip by his wife, and were to be used for quilts. He denies having been in the house of John B. Lowe for three or four years.

He accounts for his whereabouts on the night of the robbery by testifying that he was at home all night on that occasion, retiring about 9:00 or 10:00 P. M., and is corroborated not only by his wife, but as well by two relatives who spent the night in the same room, and by his mother who lived within hearing distance. As already stated, defendant's residence was two miles from the store of Copley and Crum. The prosecution offers no proof of his conduct that night.

There is no evidence to suppport the verdict, save what we have outlined, and in view of such a meagre showing of guilt, it is hardly necessary to state our conclusion that the verdict finding defendant guilty of unlawfully and feloniously entering the store of Copley and Crum with intent to steal and carry away goods therefrom is wholly unsupported by proof. It is argued in the brief of the prosecution that defendant's possession of the goods recently stolen is a

circumstance sufficiently persuasive of defendant's guilt to warrant the verdict. Even should we concede the correctness of this proposition of law, there are many reasons why it is not applicable to defendant. In the first place, six months elapsed from the time of the robbery until the goods alleged to be the stolen goods were recovered. Merchandise may change hands rapidly, and for that reason, it is held that "Possession must not be too remote in point of time." 9 C. J. page 1081. Furthermore, the cases to which the State cites us hold the following:

> "*Exclusive* possession and control of property recently stolen, are circumstances tending to show that the person found in possession is the thief, and the jury may consider them in connection with all the other circumstances and facts in proof." *State* v. *Littleton,* 77 W. Va. 804, 88 S. E. 458; *State* v. *Reece,* 27 W. Va. 375.

There is no contention that defendant's possession of the goods recovered was not shared by his father. Defendant's possession, therefore, was not exclusive. Not being exclusive, and there being no other proof connecting defendant with the crime charged, the case would come within the principle approved by many courts that "If the possession be joint with another, there must be something else in the evidence to connect defendant with the offense." 9 C. J. "Burglary," §140.

However, we need look for no more persuasive authority for our conclusion than the case cited to us by counsel for the state, *State* v. *Littleton, supra.* There a store was robbed of calico and other merchandise, and in the same month defendant was arrested. He resided with his brother-in-law, Medline, in a three-room house. Goods claimed by the state to be those stolen, but not well identified as such, were found in Medline's room. There was no other evidence connecting the defendant with the offense charged, which was housebreaking, and this court, while pointing out the principle quoted above that exclusive possession of recently stolen goods is a circumstance to be considered, reaffirmed the well-established rule of this jurisdiction that such possession is not prima facie evidence of guilt, and that in the case presented

was not only insufficient to convict the defendant, but would have been insufficient to convict Medline had he been charged with the offense. The resemblance which that case bears to the one at bar is easily noticeable. While in both cases the partial possession of the recovered goods, if proven, would be a circumstance to be considered with other circumstances in arriving at a verdict of guilty; in both cases also there were no other incriminating circumstances to be considered, and we must hold, as we held there, that the verdict can not be sustained. In these particulars both cases differ essentially from the second of the cases cited by the state, *State* v. *Reece, supra.* There this court used language similar to that heretofore quoted from the Littleton case, to the effect that possession of stolen goods is to be considered along with the other circumstances, etc., but in that case there were other incriminating circumstances in abundance, and we affirmed a conviction for grand larceny.

In remanding this case, we think it proper to point out that defendant's conviction has been founded upon his alleged entering the store of Copley and Crum with intent to steal, etc., and not upon the actual stealing. This is made evident in view of the fact that no proof was offered to show that the value of the goods in defendant's possession approached the value necessary to warrant a conviction for grand larceny. This statement is suggested by examination of the Reece case, where in the face of a defective indictment for breaking and entering, defendant was nevertheless convicted of grand larceny.

We reverse the judgment, set aside the verdict, and award defendant a new trial.

*Reversed and remanded.*