STATE OF WEST VIRGINIA *v.* CHESTER D. WAINWRIGHT

(No. 8549)

Submitted May 18, 1937. Decided June 15, 1937.

*Clarence W. Meadows*, Attorney General, *Kenneth E. Hines*, Assistant Attorney General, and *John T. Porterfield*, for the State.

KENNA, PRESIDENT:

Pursuant to a conviction under Code 61-3-19, Chester D. Wainwright was sentenced upon June 8, 1935, in the Circuit Court of Jefferson County, to serve from one to ten years in the penitentiary. To that judgment he prosecutes this writ of error.

Upon submission of the case in this court there was no appearance for the plaintiff in error, counsel who represented Wainwright in his petition for this writ of error appearing at the bar of the court and stating that he had not been employed to brief and argue the case upon final submission. For this reason, we advert to the petition for the writ of error and to the brief in support thereof for the propositions relied upon for reversal and for the supporting authorities.

The petition for the writ of error contains nine general assignments, but the brief in support of the petition argues but two, and, after having examined the record with reference to all of the assignments contained in the petition, we think that it is unnecessary to deal with more than the two principal errors relied upon, since we are of the opinion that the record clearly fails to disclose prejudicial error with reference to the other seven points raised in the petition.

The two assignments of error primarily relied upon are to the rulings of the trial court in (1) refusing to the defendant a change of venue upon his petition and affidavits filed with it; and (2) refusing to read to the jury defendant's instruction No. 8-A which would have told the jury, among other things, that unless it found from the evidence that the defendant received the goods, which at the time admittedly had been stolen, with knowledge of that fact, the verdict of the jury must be for the defendant.

Wainwright was indicted January 21, 1936, it being charged that he "did receive, and convert to his own use, he the said Chester D. Wainwright then and there well knowing the said goods, chattels, effects and property of the said W. D. Wisecarver to have been unlawfully and feloniously stolen, taken and carried away against the peace and dignity of the State," certain goods specifically described in the indictment, and alleged to have been stolen in the State of Virginia. On May 5th, by permission of court, Wainwright withdrew his previously entered plea of not guilty, and his motion to quash was entered. The motion to quash was based upon the alleged

fact that in the selection of the grand jury that had indicted him, negroes had been systematically and purposely excluded from jury service. The indictment was quashed on this ground. On the same day, upon motion of the prosecuting attorney, a special grand jury was impaneled and Wainwright was re-indicted. On May 8th, a demurrer was tendered to the second indictment, which was overruled on May 11th. On May 27th, special pleas were filed and overruled. On May 28th, a petition for a change of venue was filed and affidavits in support of the petition were filed. The prayer of the petition was denied on the same day, and on that day Wainwright was tried and found guilty.

The ground upon which the change of venue was sought was that the quashing of the indictment first returned against Wainwright for the reason that negroes had been systematically excluded from grand jury service in Jefferson County had so inflamed the citizens of that county in resentment against Wainwright, who had raised the question, as to make it impossible at that time for Wainwright to receive a fair and impartial trial of the charge against him at the hands of a jury composed of citizens of Jefferson County, and that the affidavits filed in his behalf in support of his petition were sufficient to establish that fact. Fourteen affidavits were filed in support of the defendant's motion for a change of venue.

The attorney who represented Wainwright at his trial, and who made the motion that resulted in the quashing of the first indictment, filed an affidavit in which is recounted the fact that he and the prosecuting attorney who represented the state at the trial of Wainwright were both candidates for nomination for the office of Prosecuting Attorney of Jefferson County in the Democratic primary which was held on May 12, 1936, and that the Wainwright case, and particularly the fact that by the motion to quash the indictment therein the question of the right of negroes to serve upon grand juries in Jefferson County had been raised and had been determined favorably to that right, became a campaign issue

between him and his opponent concerning that question; that affiant lost, and his opponent received, a large number of votes in the Democratic primary as a consequence. The affidavit further states upon information and belief that affiant's opponent in the Democratic primary made inflammatory speeches to large gatherings of people during the primary in the course of which it was asserted that a strong case existed against Wainwright and that it was the purpose of the speaker to convict him and send him to the penitentiary. The affidavit purports to exhibit articles from the Martinsburg Journal of May 5th, May 7th and May 8, 1936, but the articles are not in the record.

The other affidavits deal mainly with the contemporaneous discussion of the question of whether negroes should or should not be permitted to serve upon grand juries in Jefferson County, and all of them state that the Wainwright case had caused this question to become one of county-wide interest and heated talk. They express such opinions as that owing to the nature of the general discussion of this question in Jefferson County it "would be prejudicial for a negro defendant, especially the one who raised the question, to be tried now in Jefferson County"; that "if Wainwright is now put on trial here his case will go off on whether negroes should be put on grand juries and not whether he knew the cigarettes were stolen; our people are too much agitated over that question to try a negro on the question of knowledge in his rightful or wrongful purchase of cigarettes"; that "based upon his (affiant's) knowledge and opinion of the sentiment throughout this district that it is impossible for Wainwright to secure a fair trial in Jefferson County"; that "regardless of the proof of innocence which might be introduced before a jury in this county at this time, it would have little or no effect and it would be impossible to secure an acquittal in his case, that in his (affiant's) opinion from the conversations and discussions which he has had and heard, that a jury, either white or black, would now convict said Wainwright in Jefferson County, West Virginia"; that there is "bitter

feeling and resentment against such action and a feeling finally of dissatisfaction and unrest as a result of the same"; that "from these discussions he (affiant) found a bitter feeling and resentment against negroes serving upon a jury in said Jefferson County"; that "there has resulted from the question being raised a resentment and bitterness towards allowing negroes to serve as jurors in Jefferson County"; that "the people with whom he (affiant) talked were bitter in denouncing the right of negroes to serve upon juries; that when he attempted to discuss the matter with them the persons with whom he talked were so prejudiced in their feelings that he couldn't get a chance to reason with them". The other affidavits are of the same general purport and all rest upon the opinions of the witnesses. But five of the fourteen affidavits filed by the defendant express the downright opinion, based upon the heated discussion of the question of negroes serving upon grand juries in Jefferson County, that Wainwright could not receive a fair trial at the hands of a Jefferson County jury. None of the affidavits filed speak of any threats against Wainwright, of any overt act arising from the feeling about negroes serving upon grand juries in Jefferson County, or of any violence threatened against any member of the negro race pursuant to such feeling. The record shows that after the first indictment was quashed, Wainwright was immediately re-indicted by a grand jury comprised of seven white men and five negroes, and it is not intimated that any prejudice resulting from the quashing of the first indictment had a bearing upon the return of the second.

The trial court is properly vested with a broad discretion in deciding a motion for a change of venue. The trial judge is on the ground and it has even been held that in granting or refusing such motion he may properly be influenced by his own knowledge of local conditions. *State* v. *Beale*, 104 W. Va. 617, 141 S. E. 7, 401. The affidavits filed to support a motion for a change of venue must set forth facts that sustain the conclusion that the accused cannot get a fair trial in the county where he *is*

about to be tried. *State* v. *Douglas*, 41 W. Va. 537, 23 S. E. 724. If the facts stated in the affidavits to support the motion do not, in the opinion of the court, supply a basis for the opinion that the accused cannot receive a fair and impartial trial in that county, then the change of venue is properly denied. Doubtful cases must be resolved in favor of sustaining the broad discretion of the trial court.

Giving no regard to the countervailing affidavits filed by the state, we have before us in this proceeding five affidavits, including that of Wainwright's attorney, which express the opinion that the accused could not receive a fair and impartial trial if he were tried in Jefferson County under the conditions existing at that time. There are nine other affidavits, filed in support of the motion, stating that the people of Jefferson County were excited and their feelings inflamed over the fact that the first indictment against Wainwright had been quashed because of the question raised by his counsel based upon the systematic exclusion of negroes from grand jury duty in Jefferson County. All of the affidavits filed state that the excitement in Jefferson County was due to the question of whether negroes should or should not be allowed to serve upon grand juries. It is not claimed that the nature of the offense of which Wainwright was accused had anything to do with this excitement or that it prejudiced anybody against him. Naturally, it could not do so because the stolen goods that he was accused of unlawfully receiving were valued at not more than thirty or forty dollars and their theft had not occurred in Jefferson County. The three articles from the Martinsburg Journal which are referred to are not in the record, and since the prejudice claimed in the affidavit of Wainwright's attorney was based entirely upon the effect of these articles, it is not possible to weigh this phase of the affidavit. It is not claimed that Wainwright's past record in the community was such that there was any personal feeling or prejudice against him, independent of the question of negroes serving upon grand juries, to any degree whatsoever. The entire complaint rests upon whatever

feeling may have been created in Jefferson County because of the fact that Wainwright, a negro, appeared in a court of justice and interposed a defense to an indictment for felony based upon the alleged fact that negroes had been systematically excluded from grand juries in Jefferson County. We are of the opinion that it would be a very unusual consequence to a ruling by the circuit court that negroes could not be systematically excluded from grand jury service that the entire citizenship of Jefferson County would be so aroused in resentment that a jury could not be impaneled in that county which would accord the negro who had raised the question a fair trial. It seems entirely unnatural to suppose that such a circumstance would give rise to a feeling, entertained generally throughout the county and of such bitterness that would cause any considerable number of the citizens of Jefferson County to be willing to overlook their oaths as jurors and in the jury room to permit their votes to be controlled by sentiments of bitterness and resentment towards the defendant. We by no means question the sincerity of those who have expressed the opinion that this defendant could not, at the time, receive a fair and impartial trial in Jefferson County. We simply believe that the showing made by those affidavits in the aggregate did not require the trial judge to act upon that opinion. Including the affidavits filed by the state, there were twenty-five affidavits considered on the motion for a change of venue. Five of them, including that of defendant's attorney, expressed the opinion of the affiant that Wainwright could not procure a fair trial at the time and under the conditions in Jefferson County. It is significant that nine of the affidavits filed in support of the motion contain no such expression of opinion. The eleven affidavits filed in opposition all contain expressions of opinion to the direct contrary. Upon this showing it is perfectly clear to us that the trial court did not abuse its discretion in declining to accord to this defendant the change of venue petitioned for.

On the second point of error, that of refusing defendant's instruction No. 8-A, we are of the opinion that

here again the trial court did not err. The first part of the refused instruction would have told the jury that they could not convict the defendant merely because, in receiving the goods in question, he might not have acted with ordinary care. This part of the instruction is covered verbatim by instruction No. 8, which the court gave on behalf of the defendant. The part, then, of instruction 8-A that the defendant really complains should have been given is the last paragraph which reads as follows:

> "And unless you believe from all the evidence in this case, both on behalf of the State and on behalf of the defendant, Chester D. Wainwright, that the defendant, Chester D. Wainwright, had actual knowledge of the larceny of the goods he so received and so bought, your verdict must be not guilty."

Instruction No. 8, which was given on behalf of the defendant, contains the following language:

> "And unless you believe from all the evidence in this case, both on behalf of the State and on behalf of the defendant, Chester D. Wainwright, that the defendant, Chester D. Wainwright, must reasonably have known that the goods described in the indictment was stolen property and that with such knowledge of the larceny of the goods he so received and so bought them as charged in the indictment, your verdict must be not guilty."

It will be observed that both of these instructions tell the jury that Wainwright must have had actual knowledge that the goods were stolen, and that if they do not believe so they must acquit him. The only difference in the instructions in this regard is that the instruction given tells the jury that Wainwright must "reasonably have known" that the goods were stolen and this difference evidently refers to the degree of proof required to establish guilty knowledge. It must be admitted that the grammatical structure of the instruction could be im-

proved upon, but we fail to see how its substance could have prejudiced the defendant. We are of the opinion that the substance of instruction No. 8-A is fairly covered by instruction No. 8, which was given, and therefore that it was not prejudicial error for the trial court to refuse to give defendant's instruction No. 8-A. There is another assignment of error based upon the fact that the court modified instruction No. 8 before giving it. The nature of the modification does not appear in the record, and consequently we do not discuss this assignment of error.

In the memorandum supporting the petition for a writ of error in this case, the plaintiff in error relies upon the case of *State* v. *Lewis,* 117 W. Va. 670, 187 S. E. 315. In that case a verdict was set aside by this court for the reason that the trial court had instructed the jury that the defendant should be convicted if the jury believed from the evidence that he had received the stolen goods with knowledge that they were stolen *or with reason to believe* that they were stolen, whereas, the indictment charged the defendant only with having received the goods *with knowledge* that they were stolen. The indictment in this case is like the indictment in the *Lewis* case in that it charges the defendant with receiving the stolen goods with knowledge that they were stolen. As has been pointed out, defendant's instruction No. 8 conforms to this indictment and instructs the jury that proof of actual knowledge is required before a conviction can be had. It is true that an unsigned bill of exceptions sets forth an instruction apparently given on behalf of the state that told the jury they should find the defendant guilty if they believed that at the time Wainwright received the goods in question he "either knew, or had reason to believe" that they were stolen. If this instruction had been objected to, its giving would have raised the legal question that was before the court in *State* v. *Lewis,* 117 W. Va. 670, 187 S. E. 315. However, it was not objected to, and the trial court expressly refused to sign a bill of exceptions based upon the giving of this instruction. Therefore, we can consider no legal question based upon it.

The petition for a writ of error herein raises the question of the insufficiency of the evidence tendered on behalf of the state to sustain the conviction of Wainwright. We do not think that it is necessary to discuss this assignment at length. The record has been carefully examined with respect to it, and we see no reason for disturbing the verdict for the insufficiency of proof. The articles described in the indictment admittedly had been stolen in the State of Virginia. There was no question but that Wainwright received them directly from the men who had stolen them. All of the articles were new and undamaged. Wainwright paid but twenty dollars for goods that were worth far more. Wainwright's own testimony concerning the circumstances under which he bought the goods makes it plain that he was at least under very strong suspicion that the goods were stolen. Two men that he had never seen before in his life came to his office offering to sell the goods because they said they had been referred to Wainwright by a man by the name of Mike Johnson. Wainwright stated that he questioned them closely, particularly asking them whether they had gotten the goods from some warehouse in Charles Town or from the freight station. They had some difficulty arriving at a price, and when they did, it developed that the two men did not have the articles with them at that time. They stated that they would be obliged to leave and to return with the goods, and Wainwright testified that as they were leaving he cautioned them that if he were asked where he got the goods there would be nothing for him to do but to state where they came from. Later, after dark that evening, the two men brought the goods to Wainwright in a suitcase and a sack, and he gave them a twenty-dollar bill. The men who were convicted of stealing the goods in the State of Virginia both testified that they took them to Wainwright and frankly told him that they were "hot". There is other evidence of the state that it is not thought necessary to detail. It is sufficient to state that in view of the strongly suspicious circumstances admitted by Wainwright himself, and the direct testimony supporting the theory of the

state there can be no question of setting aside the verdict of the jury because of insufficiency of proof.

There is no reviewable question in this record that we believe would justify our setting the jury's verdict aside and reversing the judgment of the Circuit Court of Jefferson County. That judgment accordingly is affirmed.

*Affirmed.*