STATE OF WEST VIRGINIA *v.* LOUIS ALIFF

(No. 9038)

Submitted January 10, 1940. Decided January 23, 1940.

*Ashworth & Sanders, Kenneth Cunningham* and *J. K. Edmundson,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

RILEY, PRESIDENT:

The defendant, Louis Aliff, was indicted and convicted in the criminal court of Raleigh County for burglary and two previous convictions for felonies. The case is here on review of a judgment of the circuit court denying a writ of error.

At the trial defendant relied upon two grounds of defense: (1) the establishment of an alibi, and (2) the state's failure to identify the property charged to have been stolen.

Billie O'Dell, whose house in Lester was alleged to have been burglarized between the hours of twelve and two-thirty on the night of February 6-7th, testified that one W. L. Miller, likewise charged with the burglary, came to the door about midnight on the date aforesaid, and informed witness that her brother was dying at her mother's home about a mile and a quarter away, and that the doctor called by Miller would meet witness at the drugstore in about thirty minutes. This witness further testified that upon leaving her house ten minutes later, she locked her door and waited for thirty-five or forty minutes at the drugstore for the doctor, who did not come "because he never had been summoned"; that she then tried unsuccessfully to get an automobile ride from a man living across the street; and that she then walked to her mother's home, and upon arrival found her brother in good health. Witness, accompanied by her mother and sister, returned to Lester about two-thirty in the morning, where she found the door open, the lock forced, and a radio, revolver, two dresses and a fur coat missing. The coat, she said, was "just a plain brown fur coat, one button, no belt", and had a "brown and red plaid lining." Witness did not see the defendant on the night of the robbery, but on the night of March 4th, after he had been arrested and released under bond, defendant came to witness' home and offered to have one Leonard Floyd place the stolen goods on her porch.

Two of the state's witnesses who lived at Pemberton, which is approximately two miles to the southeast of Crab

Orchard, testified that on the night following the robbery, the defendant attempted to sell to one of them a fur coat which, in general, answered the description of the stolen coat. This coat, they said, he carried in a basket covered with a newspaper. Another of state's witnesses testified that he saw Miller's car in front of the O'Dell home between twelve and one o'clock on the night of the robbery.

At no time during the night of the robbery was the defendant seen by any witness in the town of Lester or in the vicinity of the O'Dell home, but the evidence shows that defendant and Miller were at a restaurant in Crab Orchard, about five miles east of Lester, at nine-thirty or nine forty-five o'clock on the evening of the crime.

Miller categorically denied any participation in the burglary, and testified that at no time on that night was either he or his car in Lester. Testimony he gave concerning two or three trips that night between Leonard Floyd's home in Beckley and Crab Orchard is rather unconvincing. This witness, in testifying concerning his and defendant's presence at the restaurant in Crab Orchard, to which reference has already been made, stated that he picked up the latter on the road a short distance from Beckley; that after they left the restaurant he drove defendant a short distance to the cross-road which leads to Lester, and, leaving him there, proceeded back to Beckley. This latter testimony would bear little upon defendant's defense were it not partly corroborated by the testimony of a disinterested witness, Lickliter. This witness testified that while driving through Crab Orchard to his home at Odd, he picked up the defendant at Crab Orchard about ten-thirty in the evening of February 5, 6 or 7, 1939, and drove him to Pemberton, a town lying between Crab Orchard and Odd. Upon cross-examination, this witness definitely established the date as being February 6th, because he testified that the day of the week on which this occasion happened was Monday and, of course, this court does, as it can, take judicial notice that February 6, 1939, fell on Monday and not on Friday, as stated in the attorney general's brief. Con-

forming with Lickliter's testimony, defendant stated that Lickliter drove him from the fork of the road at Crab Orchard to Pemberton, where he alighted at eleven o'clock in the evening, and there he stayed all night at the home of his niece and her husband, Mr. and Mrs. Shelton, who corroborate him as to his arrival and stay at their home.

The evidence bearing on the question how the defendant obtained possession of the coat which he sought to sell is not very satisfactory from defendant's viewpoint. He is quoted variously as having said that he did not know whether or not the coat was stolen; that he won it in a poker game; and that it was given to him at a poolroom in Pemberton by one Norman Bennett for purpose of sale. None of the stolen articles was produced and Bennett could not be found. Were it not for the strong uncontradicted testimony of Lickliter, these contradictory statements attributed to defendant would bear heavily against him in his effort to establish an alibi. In a criminal prosecution, where the state relies upon evidence, in whole or in part circumstantial, defendant's guilt must be proven to the actual exclusion of every reasonable hypothesis of innocence. *State* v. *Snider,* 106 W. Va. 309, 145 S. E. 607; *State* v. *Hunter,* 103 W. Va. 377, 137 S. E. 534; *State* v. *Dudley,* 96 W. Va. 481, 123 S. E. 241. It follows that the conflicting statements attributed to the defendant, not bearing directly on the commission of the crime, are insufficient of themselves to establish defendant's guilt. Even the alleged possession of the stolen goods, shortly after the crime, though a circumstance tending to show guilt, which the jury may consider together with all other circumstances and facts in proof, does not of itself amount to *prima facie* evidence of guilt. *State* v. *Littleton,* 77 W. Va. 804, 88 S. E. 458; *State* v. *Ringer,* 84 W. Va. 546, 552, 100 S. E. 413.

Though the burden of proving an alibi is on the accused, yet, if the presence of the accused at the commission of the crime is essential and the evidence is sufficient to raise a reasonable doubt in the minds of the jury on the

question of the accused's presence, he should be acquitted. *State* v. *Lowry,* 42 W. Va. 205, 24 S. E. 561; *State* v. *Parsons,* 90 W. Va. 307, 110 S. E. 698; *State* v. *Counts,* 90 W. Va. 338, 346, 110 S. E. 812; *State* v. *Friend,* 100 W. Va. 180, 130 S. E. 102. And though proof of an alibi ordinarily raises a question for the jury, where, as in the instant case, there is no direct proof of the accused's presence at the commission of the crime, and the state relies upon circumstantial evidence only, and the accused supports his defense of alibi by direct evidence and the testimony of a disinterested witness or witnesses of such character that the jury should have entertained a reasonable doubt, the question of the establishment of the alibi is for the court to solve.

Though the stolen goods were not produced in evidence, the identity of the coat, we think, was sufficiently established in the instant record as to present a question of fact for the jury. Two witnesses, evidently disinterested, Stella Swaggerty and Elsie Heath, gave a description of the coat, which they testified was in defendant's possession, corresponding closely to the prosecuting witness' description of the stolen coat. In *State* v. *Hunter, supra,* relied upon by defendant's counsel, which involved the larceny of a sow valued at $25.00 and two shoats valued at $15.00, this Court held it was error for the trial court to refuse to instruct the jury that the accused was not guilty of grand larceny, because the state failed to prove that a sow known to have been in accused's possession and killed by him was the one lost by or stolen from the prosecuting witness. In that case, the sow, killed and claimed to have been the one stolen, was not identified by anyone as the one stolen; Hunter testified that he bought the sow from one Price, who also testified to that fact; and a sow and two shoats were seen in the vicinity where the sow and shoats in question were actually stolen, after Hunter was said to have driven a sow and two shoats from a place near prosecuting witness' property over the mountain to his home.

Error is also assigned to the cross-examination of de-

fendant concerning his former convictions, after he had confessed thereto by admissions made in open court. The convictions having been properly averred, and plaintiff having admitted the same, the state was not required to offer proof of them. *State* v. *Savage,* 86 W. Va. 655, 104 S. E. 153. Notwithstanding the cross-examination was unnecessary and should not have been made, we do not think the defendant was prejudiced thereby.

The assignments of error based upon the giving and refusal of instructions were not stressed in oral argument or briefs and have not been considered in detail by this Court. However, in reviewing this record, we have noted error appearing from a casual reading of State's Instruction E. The erroneous part of this instruction reads, "where the State has established a prima facie case". This part of the instruction is very apt to indicate to the jury that, in fact, a *prima facie* case has been established.

For the foregoing reasons, the judgments of the circuit and criminal courts are therefore reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Judgments reversed; verdict set aside; new trial awarded.*