STATE OF WEST VIRGINIA

*v.*

ROBERT JOHN ETCHELL

(No. 12152)

Submitted September 11, 1962.     Decided October 16, 1962.

*Harrison Conaway,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for defendant in error.

CALHOUN, PRESIDENT:

In June, 1961, in the Criminal Court of Marion County, the defendant was tried upon an indictment charging that in May of that year he entered a service station operated by Robert M. Talbott, Jr., in Fairmont and stole therefrom various items of personal property. The trial resulted in a verdict of guilty as charged in the indictment, and the defendant was sentenced to the state penitentiary for an indeterminate period of from one to ten years pursuant to the provisions of Code, 1931, 61-3-12.

By an order entered September 22, 1961, the Circuit Court of Marion County refused to grant a writ of error and supersedeas to the final judgment of sentence. On a writ of error and supersedeas granted by this Court, the sole issues presented for decision involve the question whether the evidence is sufficient to support the jury verdict, and the action of the trial court in granting a certain instruction tendered by the state.

Upon arrival at the service station on the early morning of May 6, 1961, Lawrence Milford Compton, an employee, discovered that somebody had broken and entered the station during the preceding night and had stolen therefrom two swivel wrenches, two 2-gallon cans of oil, two screwdrivers, four pairs of sunglasses, approximately three dollars in pennies and nickels, and ten motor vehicle tires. The indictment alleges that the aggregate value of the stolen property was $205.41.

Two city police officers were summoned promptly by Compton. Upon arrival at the scene about 6:45 a. m., the officers observed the evidence of forcible entry into the building, made a preliminary investigation and obtained from Compton a list and description of the several items of stolen property.

On the early morning of the same day, R. E. Cool, a state policeman stationed at Sutton in Braxton County, received information that a man, under suspicious circumstances, had undertaken to sell motor vehicle tires to an employee of a nearby service station. The state policeman located the man in question and his automobile about 6:30 o'clock that morning at a service station at Gassaway in Braxton County, the same county in which Sutton is located. The man was the defendant, Robert John Etchell.

Eight of the tires taken from the service station were new tires, bearing the original wrappings. On the wrapping of each of the eight tires was a name and address as follows: "Robert Talbott, Jr., Morgantown Avenue and Speedway, Fairmont, West Virginia." The other two were recapped tires and on each of them was stenciled Talbott's name and address. The tires were "in the back seat" of the defendant's automobile in plain view. On the floor of the automobile in plain view of the state policeman were two 2-gallon cans of oil of the same description as the cans of oil which had been stolen from the service station at Fairmont the preceding night. The state policeman testified that the defendant stated to him in relation to the tires that "he had bought them off a fellow at the Blue Room in Morgantown about 2:30"; and that later he stated that "he had purchased them from a fellow at the Blue Room near Morgantown at 2:30 or 3 o'clock in the morning."

Under the circumstances outlined above, the state policeman detained the defendant in jail at Sutton and meantime got in touch by telephone with police officers at Fairmont. Two Fairmont city police officers thereafter went to Braxton County, armed with a warrant for the defendant's arrest. In addition to the ten motor vehicle tires, the officers found in the defendant's automobile two 2-gallon cans of oil, four pairs of sunglasses, two wrenches and two screwdrivers.

The ten tires were definitely identified by Talbott, the owner, and by Compton, his employee. The four pairs of sunglasses, when recovered, were mounted on a display card bearing the wording, "Merit Miracle Mirror Sun Glasses." Talbott and Compton testified that similar sunglasses, on a

display card of like description, were stolen from the service station on the night in question. Also found by the officers in the defendant's automobile at Sutton were two used screwdrivers and two used wrenches. Compton and Talbott, while not able to make an unqualified identification of these four tools, testified that in appearance they were in all respects like those stolen from the service station.

The defendant at the time of his arrest was a resident of Charleston, West Virginia, though until about six months prior thereto he had resided in Cleveland, Ohio. He testified that on May 5, 1961, he left Charleston about twelve o'clock noon for the purpose of transporting Mrs. Nadine Ash, also of Charleston, to Morgantown, West Virginia. Apparently her purpose in making the trip was to see the proprietor of the Blue Room, a beer tavern located in Westover, which is a municipality situated across the Monongahela River from Morgantown.

On May 5, 1961, the defendant had been married to Elizabeth Fay Etchell for perhaps no more than a week or so. Prior to that date, she had been employed by Mrs. Nadine Ash as a baby-sitter. The defendant and his wife both testified that on that day Mrs. Ash paid her $45 for her prior services as a baby-sitter and that Mrs. Etchell in turn gave the $45 to the defendant before he commenced his trip to Morgantown. The defendant testified that on the same day Mrs. Ash gave him $10 with which he bought some gas and oil, and that he retained the change from such purchase. Mrs. Ash testified that she paid the defendant ten or fifteen dollars prior to the time they started to Morgantown, though she was not certain the exact amount. She testified further that on the same day she paid Mrs. Etchell the sum of $45, but she did not know what Mrs. Etchell did with the money thus paid to her. When the defendant was taken in custody in Braxton County by the arresting officers, they found on his person only one cent. He was not searched when first taken in custody and lodged in jail by the state policeman. While it does not appear how much money the defendant spent from the time he left Charleston until the time he was searched, it does appear from defendant's testimony that

he was in or about the Blue Room tavern from about 8:30 until about midnight; that he was drinking during the course of the evening; and that en route to Morgantown he and Mrs. Ash stopped for food and other purchases of a minor nature.

The defendant testified that he left the Blue Room about midnight, started "straight home" and that he did not stop at any time or place until he stopped at the service station near Sutton to sell one or more tires. R. E. Cool, the state policeman stationed at Sutton, testified that the distance from Gassaway, where defendant was taken in custody, to Fairmont is about 120 or 125 miles, and that when he drove from Sutton to Fairmont to attend the trial, the trip consumed about two and one-half hours of driving time.

The defendant testified that he and Mrs. Ash passed through Grafton on the trip to Morgantown and that he returned by the same route, but, when asked about other cities, he stated, "It has been about five weeks ago, naturally not knowing this part of the country, I couldn't swear to what cities I went through." He specifically denied having been in Fairmont at any time. Mrs. Ash also was uncertain about cities they passed through or the route traveled in going to Morgantown, stating, "had I been driving, I probably would know." She was unable to state whether they went by way of Grafton.

The defendant was introduced to the proprietor of the Blue Room, Harold Bixler. The defendant testified that during the course of the evening at the Blue Room, "I let it be known I needed new tires. A fellow there, a don't know who he was, I couldn't describe him one bit, he said he had some tires and that it was a good deal; he wanted $100 for the tires." He testified that at that time he had about $50 or $55 of the money which had been given to him by his wife and by Mrs. Ash and that the other man said, "I will let you have the tires for $50.00". The defendant testified further that they went outside the tavern; that he in his automobile followed the other man in his automobile to a point about a block from the Blue Room where there were no buildings; that at that point the other man trans-

ferred the tires to the defendant's automobile; and that thereafter the defendant returned to the Blue Room for five or ten minutes, "had a bottle of beer", and started on his return journey to Charleston.

The defendant was asked the following questions on direct examination and gave the following answers:

"Q. What was done then?

"A. Put them in my automobile.

"Q. Who put them in there?

"A. The man I bought the tires from.

"Q. Also put oil cans in?

"A. At the time I went to the automobile to look to see, the oil and the tires both in the back seat.

\* \* \*

"Q. Did you take any tires, oil, tools or sun glasses from such an establishment?

"A. I did not.

"Q. Where is the first and only time you saw these tires and things?

"A. In my automobile."

The record does not disclose any effort on the part of the defendant to explain the presence of the tools, oil or sunglasses in his automobile, except the answers given to the questions above set out.

The proprietor of the Blue Room was not called as a witness, nor was any employee or patron of the tavern other than the defendant and Nadine Ash. She testified: "Yes, sir, he was talking to about four or five people and talking to one particular man, I don't know what they were talking about. They were discussing something about tires at that time; he said he knew he could get some tires cheap. I don't know what else they were talking about." Subsequently she testified: "They were talking about food, about the place, about the lights, then a light that comes in different colors." She testified further that she "wasn't interested in anyone but Bixler"; that the "music box" was play-

ing at the time; that a lot of people "were milling" around; and that when she left with Bixler about 11:30 or 12:00 o'clock the defendant was still at the tavern "just talking". She was unable to furnish any description of the man who spoke of tires.

The defendant was unable to describe the man he referred to in his testimony except that "he was about five feet seven and a half." He was unable to state whether the other man's automobile had West Virginia registration plates. He testified that he realized that there was "something fishy" about the tires, but that he "was drinking" and "just threw caution behind." He did not deny that he had told Trooper R. E. Cool that he purchased the tires "from a fellow at the Blue Room near Morgantown at 2:30 or 3 o'clock in the morning."

The jury by its verdict has found that the property recovered from the defendant's automobile was in fact stolen from the service station in Fairmont on the night of May 5-6, 1961. The verdict in that respect is warranted beyond question, there being no evidence to the contrary. If the defendant's testimony is accepted as true, it follows that the property which was stolen from the service station after the hour of nine o'clock on the evening or night of May 5, was transported by somebody to Westover, a distance of approximately nineteen miles, and delivered to the defendant at the time the sale was consummated. The exact hour of the alleged sale is not clear from the defendant's testimony, except that it was before midnight.

The defendant and Mrs. Ash testified that, before they left Charleston, a service station attendant marked on a map for their benefit that which he believed to be the most direct route of travel from Charleston to Morgantown, and that they followed the route thus suggested. This map was not produced at the trial.

The weight to be given to proof of exclusive possession by an accused person of recently stolen goods has given rise to a diversity of holdings among appellate courts. In some jurisdictions, it is held that such possession creates a pre-

sumption or inference of guilt which casts upon the accused the burden of making a satisfactory explanation of such possession. This appears to be the rule in Virginia, whether the charge be simple larceny or theft of property from a dwelling or other building. *Leebrick* v. *Comm.*, 198 Va. 365, 94 S. E. 2d 212; *Williams* v. *Comm.*, 188 Va. 583, 50 S. E. 2d 407. The subject is discussed generally in 12 M. J., Larceny, Section 22, page 22; 3 M. J., Burglary and Housebreaking, Section 15, page 645; 32 Am. Jur., Larceny, Section 140, page 1052; 9 Am. Jur., Burglary, Section 60, page 270; 12 C.J.S., Burglary, Section 59, page 735; 52 C.J.S., Larceny, Sections 105-110, pages 924-934; and Underhill's Criminal Evidence (5th Ed.), Volume 3, Larceny, Section 601, page 1463, and Section 723, page 1683.

"Other courts have stated that possession of recently stolen property is not prima facie or presumptive evidence of guilt, and does not cast on the accused the burden of making an explanation or establishing such explanation at his peril * * *." 52 C.J.S., Larceny, Section 109, page 931.

In a case involving a charge of breaking and entering, the rule applied in this jurisdiction was stated in the fourth point of the syllabus of the case of *State* v. *Littleton,* 108 W. Va. 494, 151 S. E. 713, as follows: "The possession of stolen goods is not of itself even *prima facie* evidence that the person in whose possession the stolen goods are found, is the thief, or that he is guilty of breaking and entering the house from which the goods were stolen; but the exclusive possession and control of property recently stolen, are circumstances tending to show that the person found in possession is the thief, and the jury may consider them in connection with all other circumstances and facts in proof. Point 2, syllabus, *State* v. *Littleton,* 77 W. Va. 804." In a more recent case, involving a charge of burglary, the Court stated that exclusive possession of recently stolen goods, "though a circumstance tending to show guilt, which the jury may consider together with all other circumstances and facts in proof, does not of itself amount to *prima facie* evidence of guilt." *State* v. *Aliff,* 122 W. Va. 16, 19, 7 S. E. 2d 27, 29. The same rule was applied in the case of *State* v.

*Mullett,* 94 W. Va. 680, 120 S. E. 75, which involved a charge of breaking and entering. In the case of *State* v. *Powers,* 91 W. Va. 737, pt. 5 syl., 113 S. E. 912, the Court stated: "Possession of a stolen car within a short distance from and within a half hour after the theft, the car then being driven from the place of theft, *is a strong circumstance* tending to show that the persons found in possession are the thieves, and the jury may consider it in connection with all the other facts and circumstances in proof, although considered by itself it would not be *prima facie* evidence of their guilt." (Italics supplied.) Other cases which have stated the rule in similar language are as follows: *State* v. *Ringer,* 84 W. Va. 546, 100 S. E. 413; *State* v. *Goldstrohm,* 84 W. Va. 129, pt. 3 syl., 99 S. E. 248; *State* v. *Littleton,* 77 W. Va. 804, pts. 2 and 3 syl., 88 S. E. 458 (breaking and entering); *State* v. *Reece,* 27 W. Va. 375, pt. 3 syl., (breaking and entering); and *State* v. *Heaton,* 23 W. Va. 773, pt. 8 syl.

The rule which obtains in this state is summarized and approved in The Law of Evidence in Virginia and West Virginia, Section 236, pages 414-15, as follows: "The cases abound with statements to the effect that a presumption of larceny arises from the recent and exclusive possession of stolen goods. The West Virginia courts have refused to be misled by the confusion existing elsewhere, and have adopted the correct view. Thus, in West Virginia, the possession of stolen goods is not even prima facie evidence that the possessor is the thief, or that he is guilty of breaking and entering. Possession is simply an evidential fact—a circumstance tending to show that the possessor is the thief— which the jury may consider in connection with all other circumstances and facts in proof. In other words, possession is simply a fact which will warrant an inference of guilt, if the jury sees fit to so infer; and the giving of an instruction that possession creates a presumption which it is incumbent on the accused to rebut is reversible error as invading the province of the jury."

While the mere possession by the accused of goods recently stolen is but a circumstance to be weighed along with all other facts and circumstances properly appearing, it is

said that the corroborating evidence under the rule "need only be slight." Underhill's Criminal Evidence (5th Ed.), Volume 3, Section 601, page 1466. The subject is discussed in 12 C.J.S., Burglary, Section 59e, page 739 as follows: "Some authorities hold that to warrant defendant's conviction of burglary there must be corroborating circumstances in addition to proof of his possession of the fruits of the crime shortly after its commission, although slight corroborating evidence is sufficient. Where proof of defendant's possession of the fruits of a burglary is corroborated by other circumstances of a suspicious nature, it tends to show his guilt, and possession coupled with other corroborating evidence may be sufficient to support a conviction, even though either would have been insufficient without the other." Exclusive possession by the accused of recently stolen goods, as stated earlier herein, has been characterized by this Court as a "strong circumstance" tending to prove guilt. *State* v. *Powers,* 91 W. Va. 737, pt. 5 syl., 113 S. E. 912. When there is corroborating evidence, the question of guilt is ordinarily for the jury. 52 C.J.S., Larceny, Section 141, pages 990-92; 12 C.J.S., Burglary Sections 59e and 59f, pages 739-740.

Corroborating facts and circumstances proper for jury consideration in this case include the defendant's testimony that he was relatively near Fairmont on the night in question, and that he needed tires for his automobile; the strange and unusual situation concerning the presence in his automobile of the sunglasses, two cans of oil, screwdrivers and wrenches; the fact that the road map was not introduced in evidence nor its absence explained; the defendant's rather fantastic testimony concerning the purchase of the tires at such a low price from an unidentified man; the fact, according to defendant's testimony, that he remained in or about the Blue Room from 8:30 p. m., when he delivered Mrs. Ash to that place, until midnight; and the undenied testimony of Cool, state policeman, that the defendant told him that he purchased the tires at the Blue Room about 2:30 or 3:00 o'clock in the morning.

The defendant took the stand in his own behalf and gave the only testimony in the case which might have any tendency to explain the presence of the stolen property in his automobile. His credibility as a witness was peculiarly a question for the jury. "If a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges." *State* v. *Winans,* 100 W. Va. 418, pt. 1 syl., 130 S. E. 607. See also *Stenger* v. *Hope Natural Gas Co.,* 141 W. Va. 347, 355, 90 S. E. 2d 261, 266; *State* v. *Loveless,* 142 W. Va. 809, 815, 98 S. E. 2d 773, 778; *State* v. *Taft,* 144 W. Va. 704, 711, 110 S. E. 2d 727, 733. "* * * To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." *State* v. *Bowles,* 117 W. Va. 217, pt. 1 syl., 185 S. E. 205; *State* v. *Loveless,* 142 W. Va. 809, pt. 1 syl., 98 S. E. 2d 773; *State* v. *Carduff,* 142 W. Va. 18, pt. 8 syl., 93 S. E. 2d 502. The jury has rendered its verdict, and we cannot say that the verdict is unjustified by the testimony, facts and circumstances properly appearing in the case.

The defendant asserts that the court erred in granting State's Instruction No. 4, and bases such assertion on a dictum in relation to a similar instruction in *State* v. *Aliff,* 122 W. Va. 16, 21, 7 S. E. 2d 27, 29. The instruction in the instant case was granted without objection. The alleged error was not urged as a ground of the motion to set aside the verdict and award a new trial. Subsequently there was made on behalf of the defendant a motion in arrest of judgment on the "same grounds" urged in the motion for a new trial and "for any other errors apparent on the face of the record in this case." It appears, therefore, that this alleged error in the instruction was never at any time specifically called to the attention of the trial court. As a consequence, the trial court was never permitted to rule on the objection to the instruction or to correct it if deemed erroneous. That is to say, this Court is asked to reverse the judgment in this case on a ground not urged in the trial court and consequently a ground in relation to which the trial court did not make a ruling.

In the second point of the syllabus of *State* v. *Belcher,* 121 W. Va. 170, 2 S. E. 2d 257, the Court, on a three-two division, held: "Paragraph (e) of Rule VI of the Rules of Pleading, Practice and Procedure (116 W. Va. lxiii) requiring specific objections to instructions in order for them to be considered does not apply to felony cases." In subsequent cases the Court held that specific objections to instructions are required in misdemeanor cases, though not in felony cases. *State* v. *McMillion,* 127 W. Va. 197, 203, 32 S. E. 2d 625, 629; *State* v. *Lucas,* 129 W. Va. 324, pt. 4 syl., 40 S. E. 2d 817; *State* v. *Taylor,* 130 W. Va. 74, pt. 10 syl., 42 S. E. 2d 549. The foregoing cases are authority for the proposition that a general objection to an instruction will be considered by this Court in felony cases; but that only specific grounds of objection will be considered in misdemeanor cases. It is observed here that Rule VI (e) which is referred to above was revised following the adoption of the W. Va. Rules of Civil Procedure; that as revised it was adopted by this Court on July 22, 1960; and that the revised rule, possibly through oversight or inadvertence, omits all reference to the manner or necessity of objecting to instructions. 144 W. Va. cxxxiii. The question as it relates to civil cases is covered by Rule 51 of the Rules of Civil Procedure.

The *Belcher* case, therefore, is not in point because it turned on the absence of any "specific objections" to the instruction therein involved; whereas, in the instant case there was no objection whatsoever to the instruction. In the case of *State* v. *Briggs,* 58 W. Va. 291, pt. 2 syl., 52 S. E. 218, wherein the defendant had been sentenced to be hanged, the Court stated: "A motion to set aside the verdict of a jury on the ground that the lower court gave certain instructions for the state will not be entertained in this Court, unless it affirmatively appears from the record that the accused objected to such instructions at the time they were offered, and excepted to the ruling of the court in giving them." See also *State* v. *Clark,* 64 W. Va. 625, pt. 20 syl., 63 S. E. 402; *State* v. *Warrick,* 96 W. Va. 722, 123 S. E. 799; *State* v. *Price,* 114 W. Va. 736, pt. 3 syl., 174 S. E. 518; *State* v. *Wainwright,* 119 W. Va. 34, 42, 192 S. E. 121,

125; *State* v. *Craig*, 131 W. Va. 714, 728, 51 S. E. 2d 283, 290. In the case of *State* v. *Farley*, 125 W. Va. 266, 274, 23 S. E. 2d 616, 620, involving a death sentence, the Court stated that alleged error in the giving of certain state instructions could not be considered for the reason that such instructions were given without objection, but the court then observed: "There is an exception to the general rule just stated when the trial court fails to instruct the jury in a murder case that upon returning a verdict of guilty of murder in the first degree, they may further find that the punishment be life imprisonment." On that point see *State* v. *Loveless*, 139 W. Va. 454, pt. 3 syl., 80 S. E. 2d 442.

In some jurisdictions, notwithstanding the almost universal rule, "an objection raised for the first time on appeal will be considered in an extraordinary situation or where there are exceptional circumstances, such as where the fairness, integrity, or public reputation of judicial proceedings is involved. It has been often held that an objection to a charge may be considered on appeal, although not made in the trial court, if the error is plain or fundamental and clearly prejudicial, especially in capital cases, * * *." 24 C.J.S., Criminal Law, Section 1674, pages 1141-44.

The general rule that objections to instructions not raised in the trial court will not be considered on appeal, in any type of case, civil or criminal, is in harmony with the rule applicable generally to criminal cases. "It is an almost universal rule that questions not raised in the trial court will not be considered on appeal." 24 C.J.S., Criminal Law, Section 1669, page 1050. It is likewise in harmony with the quite general rule in this state, in both criminal and civil cases, that matters not jurisdictional in nature will not be considered by this Court on appeal unless raised and passed upon in the lower court. *State* v. *Loveless*, 139 W. Va. 454, 457, 80 S. E. 2d 442, 444; *State* v. *Cruikshank*, 138 W. Va. 332, syl., 76 S. E. 2d 744; *State* v. *Files*, 125 W. Va. 243, pt. 3 syl., 24 S. E. 2d 233; *State* v. *Richmond*, 124 W. Va. 777, pt. 2 syl., 22 S. E. 2d 537; *State* v. *McGinnis*, 116 W. Va. 473, pt. 2 syl., 181 S. E. 820; *State* v. *Price*, 114 W. Va. 736, pt. 3

352

syl., 174 S. E. 518; *State* v. *Wright,* 91 W. Va. 500, 113 S. E. 764; *State* v. *Clark,* 64 W. Va. 625, pt. 20 syl., 63 S. E. 402.

The objection to the instruction, not having been raised in the trial court, will not be considered.

For reasons stated herein, the judgment of the Circuit Court of Marion County and the judgment of the Criminal Court of Marion County are affirmed, and the case is remanded to the Criminal Court of Marion County for such further action or proceedings therein as may be proper.

*Affirmed.*