**Robert Elwood YOUNG, Petitioner,**

v.

**Louie L. WAINWRIGHT, etc., Respondent.**

**Civ. No. 69–1456.**

United States District Court, S. D. Florida, Miami Division.

April 10, 1970.

Order Denying Motion for New Trial May 20, 1970.

Jack J. Taffer, Miami, Fla., for petitioner.

James M. Adams, Asst. Atty. Gen., West Palm Beach, Fla., for respondent.

## JUDGMENT

EATON, District Judge.

This is a habeas corpus proceeding instituted by a state prisoner under 28 U.S.C. § 2254. Counsel for the parties agree that there is no factual dispute.

In State v. Young, 217 So.2d 567 (Fla. 1968), the Supreme Court of Florida recited the facts as follows:

"The defendant, respondent here, was informed against and tried on a charge of breaking and entering with intent to steal. Some of the stolen property was on the seat of the car in which he was riding at the time of his arrest —in fact, it was the presence of the stolen property in the automobile, which had been observed parked near the burglarized premises, which led to the arrest of the defendant and his accomplice. More of the stolen goods

were found in the trunk of the automobile. The defendant was interrogated later at the police station by the investigating officer in the presence of the owner of the burglarized premises and the stolen goods. During the interrogation the owner identified a gold wrist watch the defendant was wearing as being a part of the stolen goods. After answering a few routine questions as to his identity and the like— falsely, as it turned out later—the defendant stated that he did not want to answer any more questions, whereupon the interrogation ceased. So far as is shown by the record, the accused made no other statements whatsoever to the police, either exculpatory or incriminating, prior to the trial. At the trial he did not take the stand nor adduce any other evidence in his own defense. The jury returned a verdict of guilty."

The pertinent language of the state trial judge's charge given in Young's trial is as follows:

"The Court further instructs you that where it is known beyond a reasonable doubt that a building has been entered and property stolen therefrom, and soon thereafter the property is found in the possession of the person or persons charged with entering the building with intent to steal, such possession unexplained may warrant the inference that such person not only stole the goods, but that they broke and entered the building with intent to steal.

"The Court further charges you that when a building has been broken and entered without the consent of the owner and personal property is stolen therefrom *and the property stolen or some portion thereof is found in the possession of the person charged with the breaking and entering with intent to commit a larceny therein, such possession without a reasonable and plausible explanation of lawful possession of the property or any portion thereof may be sufficient to warrant a verdict of guilty of breaking and entering a building with intent to commit lar-ceny therein, but the guilt of the accused doesn't follow as a presumption of law from the unexplained possession of the property stolen. The presumption of guilt in such a case is one which you may infer as a matter of fact* which you, the jury, are the sole judges of, and it is another circumstance which you may consider in connection with all the other facts and circumstances in the case which you believe to be true.

"The Court further charges you that the law does not require a defendant in a criminal case to take the witness stand and to testify and that if the defendant does not do so, you are not to indulge any presumption against the defendant by reason of such failure. The State must prove every element charged as to the exclusion of and beyond every reasonable doubt before you can find the defendant guilty." (Emphasis mine.)

The petitioner says that the portion of the charge quoted above violated the Fifth Amendment prohibition against compulsory self-incrimination and placed a penalty upon him for having exercised his right to the Fifth Amendment protection against compulsory self-incrimination at the time of arrest, interrogation and trial.

This petition presents a question cognizable in the federal courts under 28 U.S.C. § 2254 because of the portion of the charge underlined above. Had the charge regarding recent possession of stolen property and the inference that might arise therefrom been limited to the first paragraph quoted above, this Court would have dismissed the petition.

Language to the effect that

"possession of recently stolen property, if not reasonably explained, is a circumstance from which the jury might be justified in drawing the inference that the person in possession had stolen the property or had received the property knowing it to have been stolen" has been employed in federal and state courts throughout the country for many

years.[1] Justice Black confirms in his dissent in Bollenbach v. United States, 326 U.S. 607, 616, 66 S.Ct. 402, 90 L.Ed. 350, that the "permissible inference" charge regarding possession of recently stolen property is based on what he categorizes as a "rule of law" established since "time immemorial." [2]

On the other hand, North Carolina treats this "rule of law" as follows: " 'The presumption that the possessor is the thief which arises from the possession of stolen goods is * * * to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the state has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt. The duty to offer such explanation of his possession as is sufficient to raise in the minds of the jury a reasonable doubt that he stole the property, or the burden of establishing a reasonable doubt as to his guilt, is not placed on the defendant, however recent the possession by him of the stolen goods may have been'. Schenck, J., in State v. Baker, 213 N.C. 524, 196 S.E. 829, 830." State v. Holbrook, 223 N.C. 622, 27 S.E.2d 725 (1943).

The illuminating case of State v. Etchell, 147 W.Va. 338, 127 S.E.2d 609 (1962), points up the marked distinction between the treatment afforded one found in possession of recently stolen goods in Virginia as distinguished from the treatment afforded such person if found in West Virginia. The West Virginia Supreme Court of Appeals tells us in that case that the rule in Virginia apparently is that such possession "casts upon the accused the burden of making a satisfactory explanation." The West Virginia courts wisely avoid the use of the word "explanation" in discussions of the permissible inference. In West Virginia the exclusive possession of recently stolen goods is not prima facie evidence of guilt. Such possession is simply an evidential fact—a circumstance tending to show that the possessor is the thief—which the jury may consider in connection with all other circumstances and facts in proof. In other words, possession is simply a fact which will warrant an inference of guilt, if the jury sees fit to so infer, "and the giving of an instruction that possession creates a presumption which it is incumbent on the accused to rebut is reversible error as invading the province of the jury." State v. Etchell, supra. The Court in *Etchell* agrees that West Virginia courts have refused to be misled by the confusion existing elsewhere and have adopted the correct view.

1. As recently as 1967, Judge Gewin wrote for the Fifth Circuit Court of Appeals in Thurmond v. United States, 377 F.2d 448, a case where the Fifth Amendment privilege against self-incrimination apparently was not raised by the appellant: "The appellant next asserts that the district court improperly commented on the weight of the evidence when it charged the jury that it might infer guilt from the appellant's unexplained possession of the stolen vehicle shortly after it was stolen. The appellant argues that this amounted to a statement that the appellant was guilty as charged. We can not agree. It is well established that the theft of a recently stolen article may be inferred from the unexplained possession of that article." Judge Gewin then explained that whether or not such inference should arise depended entirely upon the jurors' *evaluation of the evidence* and the credibility of witnesses.

In Herman v. United States, 289 F.2d 362 (5th Cir. 1961), Judge Wisdom wrote for the Court as follows: "Unexplained possession of the fruits of the crime, shortly after its commission, justifies the inference that the possession is guilty possession. Such evidence is not more than prima facie evidence of guilt, but it may control if it is not explained *by circumstances* consistent with innocence." (Emphasis mine.)

2. In addition to the "inference" as distinguished from "presumption" controversy (See Barfield v. United States, 229 F.2d 936 (5th Cir. 1956); Herman v. United States, supra; fn. 2 Justice Black's dissent p. 616 in Bollenbach v. United States, supra.) that appeared throughout the law until fairly recently, we find startling differences in the application of this "rule of law" to criminal cases. The State of Alabama, as an example, "calls a spade a spade." The following is quoted directly from Hoggle v. State, 36 Ala.App. 703, 63 So.2d 289 (1953): "It has long been the rule in this jurisdiction that recent possession of stolen property by the accused *places upon him the burden of* explaining this possession and if he fails to make a reasonable explanation a presumption of guilt arises that will support a conviction. Jordan v. State, 17 Ala.App. 575, 87 So. 433; McFarling v. State, 35 Ala.App. 191, 45 So. 2d 322." (Emphasis mine.)

■■ Of course, the fact of possession of recently stolen property may give rise to a reasonable inference that the possessor stole it. When goods have been taken from one person and quickly thereafter found in the possession of another, it may reasonably be inferred that they were taken by the latter—unless the *circumstances as shown by the evidence* otherwise explain the possession so that such inference would not be reasonable. It is the underlined portion of the charge recited above, in my judgment, that violates the Fifth Amendment right against compulsory self-incrimination. I think it unavoidable that a juror would understand that portion of the charge as authorizing the juror's consideration of the accused's having failed to come forward to explain his possession as a circumstance from which guilt might be inferred.[3] I can read the charge no other way and my feeling is borne out by every Florida appellate Justice and Judge who has considered the impact of the charge given in this petitioner's state court trial.[4] Young v. State, 203 So.2d 650 (Fla.App.1967), and both the majority and dissenting opinions in State v. Young, *supra,* show that the charge was directed towards the accused's "duty to explain" when found in possession of recently stolen property. The underlined portion of the charge was designed for the purpose of having the jury understand that the failure to explain on the part of one found in possession of recently stolen property might be considered as a factual circumstance in the jury's deliberation. The following language is taken from the majority opinion of the Supreme Court of Florida in State v. Young, *supra.*

"The fact that the accused does not come forward at his earliest opportunity and explain his possession is an additional circumstance from which the jury may draw an inference of guilt, the basis for this inference being

'* * * the obvious consideration that, if the possession was lawfully acquired, the party would be able, at least shortly after its acquisition, to give an account of the manner in which such possession was obtained.' State v. Hodge, 50 N.H. 510, cited with approval in Tilly v. State, 1885, 21 Fla. 242."

We learn from the opinion in Young v. State, *supra,* and from the majority opinion in State v. Young, *supra,* that the charge given in Young's trial was taken directly from the Florida case of McClain v. State, 185 So.2d 707 (Fla. App.1966). There the Second District Court of Appeal of Florida wrote that:

"It [the Fifth Amendment] does not go so far as to prohibit a jury from considering as circumstantial evidence the possession of stolen property, for which possession the defendant, at a time *prior* to trial has offered no explanation." (Emphasis theirs.)

citing other Florida cases, the court, in *McClain* quoting from Romanello v. State, 160 So.2d 529, 534 (1 DCA, 1964), added that the explanation of possession thus referred to is that

"given by the accused when he is first under duty to speak after such recently stolen property is discovered in his possession. There is no burden upon defendant to take the stand and explain such possession at the trial."[5]

---

3. "We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." Walker v. United States, 404 F.2d 900 (5th Cir. 1968).

4. See also Urquhart v. State, 211 So.2d 79 (Fla.App.1968) where a similar charge was so construed.

5. The proposition that an "accused" had a duty to speak when found in possession of stolen property, but was privileged not to speak at trial, is a throw back to the 18th century in England when one had no privilege against self-incrimination prior to trial, though he could not be required to testify at trial. It goes back to the days when the courts in this country were limiting the impact of the Fifth Amendment to "any criminal case." See

■ It should be made clear here that this Court has neither the inclination nor the authority to review the work of the Florida appellate courts. This Court's function, in a § 2254 proceeding filed by a state prisoner, is a separate function from the appellate function performed by the Fourth District Court of Appeal of Florida and the Supreme Court of Florida. Reference is made to the language in opinions rendered by those courts as they considered Young's case only for the purpose of showing that the judicial officers who serve there interpreted the charge as I do.

We learn from those opinions that the concept that one in possession of recently stolen property should have the impulse to explain his possession at his first opportunity came into our law from the English common law—and that is so.[6] But England had no constitutional prohibition against compulsory self-incrimination as that common law developed.

■ The Fifth Amendment protection against compulsory self-incrimination was ratified as a part of our Constitution in 1791 to the benefit of *every* citizen, including the innocent as well as the guilty. Grunewald v. United States, 353 U.S. 391, 421, 77 S.Ct. 963, 1 L.Ed.2d 931 (1956). I do not believe that we can justify the charge given in Young's case by general reference to the English common law.

Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, the turning point in our law as to that concept. The proposition was that if a person were found in possession of recently stolen property he, if innocent of wrongdoing, would have the *natural impulse* to explain the possession at his first opportunity. His failure to explain the possession before the criminal case developed could properly be considered against him at trial. However, if the situation developed into a *criminal case*, he was protected by the Fifth Amendment against being compelled to be a witness against himself during the trial.

6. The infamous Court of Star Chamber, in which trial by jury was unknown, was abolished in 1640, but the questioning of the accused at his trial against his will continued unaltered for some decades thereafter and the examination of the prisoner by the committing magistrate continued for two centuries. Mayers, Shall. We Amend The 5th Amendment? pp. 14, 15.

By the 18th century the questioning of a defendant *at trial* against his will had fallen into disuse in the courts of England, Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), but it was not until the middle of the 19th century that the accused achieved exemption from questioning at the preliminary examination. Mayers, Shall We Amend The 5th Amendment? p. 16.

An English statute, 9 Anne c. 14, required a defendant in a civil action brought to recover money won in unlawful gaming to testify under oath in pretrial proceedings; and it afforded him no immunity from subsequent criminal prosecution founded on his own admissions, thus compelled, unles he should make complete restitution. And this statute, re-enacted in at least one of the colonies, was still in force in the state of Georgia as late as 1853. See Hidgon v. Heard, 14 Ga. 255.

The act of 6 Geo. IV, ch. 16 § 36 (1825) authorized the compulsory examination of a bankrupt "touching all matters relating either to his trade, dealings, of estate, or which may tend to disclose any secret grant, conveyance or concealment of his lands." The acts of 12 & 13 Vict., ch. 106, § 117 (1849) contained the same provisions. British courts in construing those acts held that the bankrupt must answer, though his answer might furnish evidence of his crime; that he must answer even if an indictment were pending against him; and that the evidence thus compelled was admissible on his criminal trial. Twining v. New Jersey, supra. The act of 46 & 47 Vict., ch. 52, § 17 (1883) expressly provided that the bankrupt's examination should be taken in writing and signed by him and "may thereafter be used in evidence against him." Twining v. New Jersey, supra.

In 1776 there were in force various statutes in New York (some passed only a few years before the Revolution) authorizing the magistrate to tender to a person suspected of violation of certain laws an oath to purge himself, refusal being punishable, and in some cases regarded as confession of guilt. Goebel and Naughton, Law Enforcement in Colonial New York, pp. 657, 658 (1944).

It is plain common sense that inferences arise from established fact. An inference arises through the process of reasoning by finders of fact. We need not rely on England there. Flight, concealment, resistance to lawful arrest, presence at the scene of a crime, incriminating fingerprints, and *possession of recently stolen property* all are incriminating circumstances properly to be considered by the jury. The one circumstance that shall not be incriminating is that an accused relied upon the Fifth Amendment—and thus offered no explanation upon his first opportunity to do so.

Such a charge as was given in Young's trial singles out a set of facts and makes the prosecutor's argument, which he himself would not be allowed to make absent the charge, that the jury may find the defendant guilty on that set of facts in the absence of a plausible and satisfactory explanation by the accused.

Picture the situation. The trial neared its conclusion. The prosecution had made out a prima facie case, relying upon direct evidence and the inferences that flowed from the evidence. No one had explained before or during trial that the defendant's possession of recently stolen property was a lawful possession. Counsel had avoided comment upon the defendant's refusal to answer questions during interrogation prior to trial and upon his not having taken the stand. The jury was interested to hear what the judge had to say. The judge charged the jury that the prosecution had the burden of proof; that the jury should draw no inference whatsoever from the defendant's not having testified in his own behalf; but that possession of recently stolen property by the one charged, without a reasonable and plausible explanation of lawful possession, may give rise to a " * * * presumption of guilt" which the jury "might infer as a matter of fact * * * "

Young not only had no duty to speak, he had a *constitutional right* not to speak. He affirmatively asserted that right during custodial interrogation and, in my judgment, he was penalized for having done so.

The answer to the question before this Court lies in a statement by Judge Cross, who wrote the opinion on Young's appeal and by Justice Thornal, who wrote the dissenting opinion when Young's case reached the Supreme Court of Florida.

Judge Cross wrote:

"The privilege to remain silent would be a hollow privilege if that silence would create an inference of guilt at the trial."

Justice Thornal wrote:

"A *duty to explain* is simply inconsistent with the *right to remain silent*." (Emphasis his.)

The rationale behind this "duty to speak," duty to explain, "or natural impulse to speak," simply cannot be amalgamated with the rationale of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and post-*Miranda* cases.

Without question, the Fifth Amendment privilege against compulsory self-incrimination was most conservatively construed in this country during the 18th and 19th centuries. In our early judicial history, the charge given in Young's trial would have been looked upon with favor by the Federal Courts.

In the 1896 case of Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090, the trial jury had been charged that a party found in recent possession of the fruits of a crime was "required to show that such possession was innocent and honest," and was required to account for that possession in a "straight-forward" way. Wilson had been found in the Indian country in possession of property belonging to a deceased person who apparently had been killed two weeks beforehand. Wilson was arrested for murder. He was taken before a United States Commissioner. The Commissioner examined Wilson and Wilson answered questions. The Commissioner's testimony was that "he (George) asked the questions and Wilson went on and answered them". He did

not tell Wilson that he had a right to answer or not as he chose, nor advise him as to his rights in any way. The trial court admitted into evidence Wilson's statements made before the Commissioner, ruling that the statements were given voluntarily. Wilson was convicted and sentenced to be hanged. The Supreme Court of the United States affirmed. The unanimous opinion reads in part as follows:

> "In the case at bar defendant was not put under oath, and made no objection to answering the questions propounded. The commissioner testified that the statement was made freely and voluntarily, and no evidence to the contrary was adduced \* \* \* He (defendant) testified, merely, that the commissioner examined him 'without giving him the benefit of counsel, or warning him of his right of being represented by counsel, or in any way informing him of his right to be thus represented.' He did not testify that he did not know that he had a right to refuse to answer the questions, or that, if he had known it, he would not have answered. His answers were explanations, and he appeared not to be unwilling to avail himself of that mode of averting suspicion. It is true that, while he was not sworn, he made the statement before a commissioner who was investigating a charge against him \* \* \* ; he was in custody but not in irons. There had been threats of mobbing him the night before the examination. He did not have the aid of counsel, and he was not warned that the statements might be used against him or advised that he need not answer. These were matters which went to the weight or credibility of what he said of an incriminating character; but, as he was not confessing guilt, but to the contrary, we think that, under all the circumstances disclosed, they were not of themselves sufficient

to require his answers to be excluded on the ground of being involuntary, as a matter of law."

In 1908, the Supreme Court of the United States, in Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97, upheld New Jersey state court convictions where the trial judge had charged that the jury could properly draw an inference against an accused from his refusal to take the stand during trial and deny incriminating evidence against him. The Supreme Court held that the first eight amendments to the Constitution of the United States were restrictive only of national action; that the due process clause of the Fourteenth Amendment did not require that a citizen of a state be exempted from compulsory self-incrimination in the courts of a state which had not adopted the policy of such exemption.[7] In that case, the Supreme Court traced the English and early American history of the exemption from compulsory self-incrimination and then wrote as follows, at p. 110:

> "This survey does not tend to show that it was then in this country the universal or even general belief that the privilege ranked among the fundamental and inalienable rights of mankind; and what is more important here, it affirmatively shows that the privilege was not conceived to be inherent in due process of law, but on the other hand, a right separate, independent and outside of due process."

Every reasonable observer recognizes, as did the Supreme Court of Florida in State v. Young, supra, that since *Wilson* and *Twining* there has been an enormous expansion in this country of the privilege against self-incrimination as the courts have interpreted the Fifth Amendment language "nor shall he be compelled in any criminal case to be a witness against himself."

■■ Some revere the expansion—others decry it. It seems to me that the

---

7. New Jersey had no state constitutional prohibition against self-incrimination and the courts of that state recognized the

right of trial judges to charge as the judge did in Twining's case.

privilege has been extended far beyond the anticipation of the framers of the Fifth Amendment. But, be that as it may, we have a sworn duty to uphold the Constitution of the United States as its provisions have been interpreted by the federal courts of appeal and by the Supreme Court of the United States as the extension took place. As said by the late Justice Frankfurter, speaking for the court: "This constitutional protection must not be interpreted in a hostile or niggardly spirit." Ullmann v. United States, 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511 (1956).

Some of our courts appear to have singled out the proposition that one found in possession of recently stolen property ought to be able to give a satisfactory account of the manner in which possession was obtained, surrounded it with an aura of tradition, called it a rule of law, left it undisturbed in a category of its own, and continued to charge juries upon it as this expansion of the privilege took place. The idea that possession of recently stolen goods calls for an explanation by the accused is incongruous when considered in light of the more recent developments in our case law.[8]

Those developments are known to lawyer and layman. However, I shall refer to four cases, not precisely in point with the problem presented in the petition before this Court, which indicate the breadth of those developments. In three of the cases, the accused affirmatively asserted his Fifth Amendment privilege prior to trial—as did Young in our case.

In Grunewald v. United States, supra, the Supreme Court of the United States held that under the circumstances of that case it was prejudicial error for a trial judge to have permitted cross-examination of a defendant on the fact that he had pleaded his Fifth Amendment privilege before the Grand Jury. The judge had charged the jury that the defendant's Fifth Amendment plea could be taken only as reflecting upon his credibility and that no inference as to guilt or innocence could be drawn therefrom. Justice Black, in a concurring opinion joined in by Chief Justice Warren, Justice Douglas and Justice Brennan, did not rest his conclusion on the particular circumstances of that case. He wrote:

"I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them."

In Baker v. United States, 357 F.2d 11 (1966), the Fifth Circuit Court of Appeals wrote that it is reversible error to allow an F.B.I. agent to testify that the defendant had declined to give a statement in the absence of counsel. The court observed that the defendant had exercised a constitutional right by so declining. Proof that he declined to make a statement upon being questioned by the F.B.I., the court said, was as objectionable as it would have been to comment on a defendant exercising his constitutional right not to testify at trial.

The United States Court of Appeals for the Fifth Circuit in Walker v. United States, supra, reversed a jury conviction where testimony had been received that the accused had refused to answer a question, but rather had replied, "I refuse to answer on the grounds it might incriminate me." The question was not asked during custodial interrogation and

---

8. England has apparently clung to that which we say it wrought. In the 1955 case of Regina v. Hepworth, (1955) 2 All E.R. 918, the Court of Criminal Appeal, Lord Goddard, C. J., wrote as follows: "I emphasize that this is a receiving case, and in a receiving case, it is always more important that the onus of proof should be emphasized and explained. The jury should be told that the possession of goods recently stolen *calls for an explanation*, and, if none is given, or one is given which the jury are convinced is untrue, that entitles them to convict." (Emphasis mine.)

it was not asked by a police officer. That court wrote at page 902 of 404 F.2d:

"When an accused responds to a question, or even to an accusation, with an assertion of a claimed legal or constitutional right, *the jury should not be permitted to infer from such assertion any consciousness of guilt or tacit admission.*" (Emphasis mine.)

And now we have the footnote in Miranda v. State of Arizona, supra, which reads as follows:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation."

Just as was the case with Judge Weaver of Iowa in State v. Brady,[9] 91 N.W. 801 (1902), and Judge Brown in his concurring opinion in Barfield v. United States,[10] 299 F.2d 936 (5th Cir. 1956), I cannot resist the urge to write further on this subject.

If a charge which employs the word "explanation" is to be given on this one particular permissible inference,[11] it should be made clear, particularly in a case where the defendant has not testified, that such inference should not be drawn *if the evidence* presented in the case provides a satisfactory explanation. The charge recited in Orser v. United States, 362 F.2d 580 (5th Cir. 1966) is a charge that was often used in federal courts until 1968. It was taken directly from § 10.10 of Federal Jury Practice and Instructions authored by the late Chief Judge Mathes and Chief Judge Devitt. The charge attempted to make it clear that the defendant himself was not called upon to provide the explanation.

After the 1965 edition of the jury instruction book had been distributed, the Supreme Court of the United States delivered United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). In that case, a majority of the Court approved a charge on "permissible inference." The trial judge had tried very hard to make it clear that the defendant did not have to explain. He did slip up once (which is not an unusual occurrence for a trial judge) when he employed the phrase "unless *the defendant* by proven facts and circumstances explains such presence to the satisfaction of the jury." (Emphasis mine.) The majority of the Supreme Court thought that phrase, *when considered in the context of the instruction as a whole*, could not be fairly understood as a comment of the petitioner's failure to testify. However, the majority did make a suggestion as to how the charge might be improved. The suggestion gave rise to a revision of the suggested charge in the jury instruction volume. Where the charge *formerly read*:

"Possession may be satisfactorily explained through other circumstances, other evidence, independent of any tes-

9. Judge Weaver's words were these:
"The use of the terms 'presumption of guilt' * * * 'prima facie evidence of guilt' with reference to the possession of stolen goods has perhaps been too long indulged in by courts and text writers to be condemned, but we cannot resist the conclusions that, when so employed, these expressions are unfortunate, and often misleading."
He then pointed out the danger that a charge in a criminal case to the effect that the showing of a specific fact is prima facie evidence of guilt may lead jurors to believe that the defendant has the burden of proving innocence.

10. Judge Brown apparently reacted with "considerable surprise" to the "entrenched principle" under discussion in *Barfield.*

11. A charge on possession by the accused of recently stolen property and the inference that may arise therefrom is a comment upon the evidence. The general English practice of the judge giving to the jury his opinion on the facts is the chief origin of such a charge. See the discussion in State v. Hodge, 50 N.H. 510 (1869) quoted at length in Wigmore on Evidence Vol. IX, 3rd Edition, § 2513, beginning on page 417.

timony of the accused,"
it now reads:

"Possession may be satisfactorily explained by facts and circumstances in evidence, independent of any testimony or other evidence from the accused. The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

That's better yet. But must we use the word "explanation" at all? Must we work in the shadow of some "rule of law" or "rule of evidence" obtained from England where it was expected that one in possession should explain at his earliest opportunity? It would be painless to right ourselves. We are talking about the circumstantial evidence rule. That is why the charge in the federal courts usually includes this language:

"if any possession the accused may have had of recently stolen property is consistent with innocence, the jury should acquit the accused."

The word "explanation" in today's federal court charges is there to make it clear to a jury that the direct evidence may give rise to an inference of intent or knowledge on the part of the defendant, but that such inference would not reasonably arise if the circumstances shown by the evidence explain the recent possession, the burden of proof always remaining upon the prosecution. I think that the jurors could better be told that they have a right to draw an inference from directly proven facts if such inference is one which would naturally and logically arise from those facts according to the common experiences of mankind; but that they should not rely on speculation or guesswork. The prosecutor could quite properly argue circumstantial evidence and reasonable inference to the jury with particular reference to the defendant's possession of recently stolen property and without direct or indirect comment upon the defendant's not having taken the stand.

However, if the trial judge is inclined to comment upon the specific fact of possession of recently stolen goods, the charge might be as follows:

"Possession of property recently stolen may be a circumstance from which you may reasonably draw the inference that a person in possession knew the property had been stolen. It is for you to decide whether or not the circumstances as shown by all the evidence in the case warrant such an inference."

A brief definition of reasonable inference, as distinguished from surmise and speculation, would follow.

Without question, the trial judge in Young's trial followed the law of Florida. The eminent author of the majority opinion in State v. Young, supra, is internationally recognized as a leader in the judicial field. But, as I see the case before this Court, having been admonished that the Fifth Amendment privilege should be given a liberal application, Ullmann v. U. S., supra; Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); Maffie v. United States, 209 F.2d 225, 227 (1st Cir. 1954), the particular charge given in Young's trial penalized him for having affirmatively availed himself of a constitutional right and it violated the federal constitutional prohibition against compulsory self-incrimination. Thus, his trial did not comport with federal constitutional standards.

Therefore, the Petition for Writ of Habeas Corpus filed in this cause is hereby granted.

Unless the State of Florida affords petitioner Robert Elwood Young a new trial on the October 16, 1965, charge in criminal case number 1241, in the Circuit Court of the Ninth Judicial Circuit of Florida, in and for Indian River County, within a reasonable period of time from this date, this Court will be obliged to release the petitioner from the June 21, 1966, sentence entered in that cause, which sentence petitioner is now serving in the custody of the Respondent.

Respondent is directed to notify this Court within sixty days from the date of this Order of the status of the case aris-

ing out of the October 16, 1965 charge in the Circuit Court of the Ninth Judicial Circuit of Florida, in and for Indian River County.

Unless petitioner is otherwise detained under a valid sentence, he is entitled to be released on bond on the October 16, 1965 charge of Breaking and Entering with intent to commit a felony.

## ORDER DENYING MOTION FOR NEW TRIAL

Following this Court's entry of Judgment, the Respondent filed a "petition for re-hearing" which the Court treats as a motion for new trial.

Respondent has advanced two recent cases which he says should cause this Court to reconsider its ruling and to find for the Respondent. They are United States v. Cook, 419 F.2d 1306 (5th Cir. 1969), and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). Those two cases have been carefully considered in light of the record. Neither case persuades me to alter the Judgment. In neither of those cases are we told that the accused, at custodial interrogation prior to trial, affirmatively asserted his constitutional right to remain silent.

As Judge Cross wrote for the Court in Young v. State, 203 So.2d 650 (Fla.App. 1967), "The privilege to remain silent would be a hollow privilege if that silence would create an inference of guilt at the trial." And as Justice Thornal wrote for the dissent in State v. Young, 217 So.2d 567 (Fla.1968), "A *duty to explain* is simply inconsistent with the *right to remain silent*." (Emphasis his.)

The constitutional privilege not to explain would be hollow indeed if at trial the judge is free to advise the jury that "the presumption of guilt" in a possession of stolen property case may be in-

ferred as a matter of fact and that the unexplained possession [1] is "another circumstance" that the jury may consider against the defendant.

It is the particular charge given in Young's trial superimposed upon Young's assertion of a constitutional right prior to trial that places this case in a different category from the two cases cited by the Respondent. That combination of factors seems to me to run afoul of reason. One collides with the other. The combination does not fit into the system of fairness for which we strive.

Should the applicable portions of the Miranda warning in a recent possession of stolen property case be that the accused has a right to remain silent, that anything he says may be used against him, but that if he does not explain now or later, his failure to explain may be considered against him by a jury?

Absent that prime consideration, *Cook* would not affect this Court's reasoning. *Cook* falls within the category of cases, including recent cases, which holds that a jury may constitutionally be charged to look for an explanation so long as the jury is told that the recent possession of stolen property may be explained by other facts and circumstances *in evidence*. The charge in *Cook* followed the charges referred to in this Court's Judgment as charges given in the federal courts and found acceptable.

*Cook* relies upon United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Thurmond v. United States, 377 F.2d 488 (5th Cir. 1967), and Orser v. United States, 362 F.2d 580 (5th Cir. 1966). Each of those cases was cited in this Court's Judgment as a case where such a charge as given in *Cook* has been found acceptable. Young's jury was not charged that the explanation may come from the evidence presented in the case.

---

1. The charge in Young's case, taken directly from McClain v. State, 185 So.2d 707 (Fla.App.1966), does not make it clear whether the *presumption of guilt* is "another circumstance" that the jury may consider, or whether the *unexplained possession* is "another circumstance." It seems to say that the presumption of guilt may be inferred as a matter of fact and is "another circumstance" which may be considered. However, it must have been intended that unexplained possession might be "another circumstance."

The charge to Young's jury, as it reads to me and as it read to every Florida appellate judge who considered it, placed a "duty to speak" upon Young himself.

Turner v. United States, supra, considered the validity of provisions of the federal narcotics law which authorize an inference of guilt from the fact of possession of narcotic drugs. The jury in the *Turner* trial was specifically charged that the inference authorized by the statute did not require the defendant to present evidence. The jury was informed that to convict it "must be satisfied by the *totality of the evidence* irrespective of the sources from which it comes of the guilt of the defendant." (Emphasis mine.) The majority opinion of the Supreme Court of the United States held that if the jury relied on that instruction, it was entitled to do so.

With all deference, I must say that *Turner* seems to undo several propositions that I thought basic in the jury trial of a criminal case and in the judicial review for sufficiency of the evidence presented to the jury. However, the charge given in Turner's trial comports with the charges discussed in this Court's Judgment and recognized there as acceptable charges.

In *Cook* we find the following language:

"If the appellant's argument were accepted, the government could never introduce evidence in sufficient quantities to compel a defendant to either explain or suffer a guilty verdict."

I do not read that dictum as placing the burden of proof or the burden of going forward with the evidence upon the defendant, no more than I read the language in *Cook* having to do with the defendant's opportunity to "prove his innocence" as even suggesting that a defendant ever has the burden of establishing innocence.

The ruling in *Turner* contains the following language:

"Hence, if he is to avoid conviction, he faces the urgent necessity either to rebut or to challenge successfully the possession inference by demonstrating the fact or the likelihood of a domestic source for heroin, not necessarily by his own testimony but through the testimony of others who are familiar with the traffic in drugs, whether government agents or private experts."

Surely that language does not place the burden of proof on the defendant in a possession case where the inferences of intent and knowledge may arise. I do not read it as prescribing that in such a case the defendant has the burden of going forward with the evidence every time the evidence against him is such as to possibly give rise to such inferences.

Neither the trial judge in *Cook*, nor the trial judge in *Turner*, placed the duty upon the defendant of going forward with the evidence. The charges in both instances were approved in the cases now relied upon by the Respondent.

█ A defendant has no *duty* to put on evidence when the prosecution's case is predicated entirely on direct evidence. Obviously, a *duty* to do so does not arise by virtue of the prosecution's reliance upon circumstantial evidence— upon inferences which may arise from direct evidence. The language quoted from *Cook* and *Turner* refers to the practical proposition that a defendant may find himself facing what appears to be imminent conviction unless he puts on some testimony to explain away the dilemma in which he finds himself knowing that recent possession is likely to give rise to a damaging inference.[2] Of course there are many trials where a defendant, if he is to avoid conviction, faces the urgent necessity of placing evidence before the jury, though not necessarily through his own testimony. The language of *Cook* and *Turner* simply can-

---

2. The language found in footnote 35 in *Turner* quoted from Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 69 L.Ed. 904 (1925) also reads that way.

not be read to say that *the law* may, on occasion, compel a defendant to take the stand. Circumstances may compel him to do so, but the law does not. A trial judge's charge on the law should not.

Particularly appropriate here is the following language taken from the majority opinion in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106:

> "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."

Our case more closely parallels *Griffin* than it does the two cases upon which the Respondent relies. In *Griffin*, the Supreme Court of the United States reversed a California conviction. Under authority of a state constitutional provision, the trial judge in *Griffin* had, in effect, charged the jury that the failure to deny or to explain might be considered by the jury as tending to indicate the truth of the evidence against the defendant. The trial court instructed the jury, as the trial court did in Young's case, that a defendant has a constitutional right not to testify, but it told the jury:

> "As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify, or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable."

The charge went on to explain that failure of a defendant to deny or explain the evidence of which he had knowledge does not create a presumption of guilt nor by itself warrant an inference of guilt nor relieve the prosecution of any of its burden of proof. The harsh music of

that California constitutional provision and of McClain v. State, supra, is written in the same key. The instruments are different. The words are similar. The tone is the same. The California constitutional provision and the language of *McClain* attempt to provide, in substance, a rule that allows the state the privilege of tendering to the jury for its consideration the failure of the accused to testify.

In my judgment the language in Young's case contained more than illusion and innuendo based on defendant's decision not to testify after he had availed himself of his constitutional right not to answer questions before trial and during trial.

Therefore, it is

Ordered and adjudged that Respondent's motion for new trial is denied.