# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs) **No. 14-0729** (Mingo County 13-F-67)

**Donald K. Medley,**
**Defendant Below, Petitioner**

**FILED**

May 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Donald K. Medley, by counsel Susan J. Van Zant, appeals the Circuit Court of Mingo County's "Sentencing Order," entered on June 10, 2014, following petitioner's jury trial convictions of first degree murder and concealment of a deceased human body. Respondent State of West Virginia, by counsel Christopher S. Dodrill, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

The victim of petitioner's offenses was Evelyn Farnum, with whom petitioner shared a home in Mingo County. At the time of the offenses, petitioner was forty-five years old and the victim was fifty-five years old. The evidence at trial was that on December 30, 2012, the victim spent the day with her daughter, Andrea Ferris, at Ms. Ferris' home doing various home improvement projects. Ms. Ferris drove her mother home, dropped her off at about 10:00 p.m., and left around 10:30 p.m. After returning to her home, Ms. Ferris called her mother's residence and petitioner answered. Ms. Ferris asked to speak to her mother and petitioner stated that she was "passed out." Ms. Ferris asked petitioner to wake her up and petitioner stated that "she won't wake up."

The following day, petitioner went to Ms. Ferris' residence and informed her that her mother "took off last night" and that he did not know where she went. According to Ms. Ferris, petitioner was shaking throughout the morning and drinking heavily, to the point that she asked him to leave because he was cursing and scaring her young children. Petitioner left Ms. Ferris' residence around 5:00 or 6:00 p.m.

The next morning, January 1, 2013, Ms. Ferris went to her mother's residence to check on her because her vehicle was still not there. Ms. Ferris encountered petitioner sitting on the

1

sofa "zoned out" with no lights or television on. She noticed that her mother's purse, cell phone, and cigarettes were still in her bedroom. Ms. Ferris left the residence and returned around noon with her two aunts. Petitioner denied knowing anything about the victim's whereabouts. At that point, Ms. Ferris filed a missing persons report with the West Virginia State Police.

On January 4, 2013, the police received a call from Jonathan and Jeffrey Harrison, friends of petitioner and petitioner's brother. The Harrisons told the police that they saw petitioner push the victim's Jeep into Laurel Lake near their residence. Petitioner's brother, Greg Medley, was at the Harrison's residence and advised the police that petitioner had come there and said he needed help getting rid of the victim's body and to meet him at Laurel Lake. The police recovered the Jeep from the lake with the victim's body inside. Her autopsy revealed that she died from manual strangulation with "additional evidence of assaultive injuries of the face and head."

On January 5, 2013, petitioner gave a statement to the police and confessed to the victim's murder and concealment of her body. He stated that he and the victim had been arguing and that the victim slapped him. Petitioner stated that he "just flew off . . . grabbed her neck an [sic] choked her[.]" Petitioner also stated that he hit her in the head. Finally, he admitted that once he realized she was dead he put her on the floor of her Jeep and pushed the Jeep into the lake.

Petitioner was indicted for first degree murder and concealment of a deceased human body. Following a jury trial in May of 2014, he was convicted of both charges. By order entered on June 10, 2014, the circuit court sentenced petitioner to life in prison with mercy for first degree murder and one to five years in prison for concealment of a deceased human body, with the two sentences to run consecutively. Petitioner now appeals to this Court.

**Discussion**

On appeal, petitioner raises nine assignments of error, which we condense into six separate issues for our discussion. First, petitioner challenges the circuit court's admission of his statement to the police because he was questioned without the presence of an attorney. The record reflects that petitioner signed a *Miranda* rights waiver form at 6:00 p.m. on January 5, 2013, and in doing so, waived his right to have an attorney present at that time. After seventeen minutes of questioning by the police, petitioner stated that he no longer wished to talk and the police ended the questioning. However, approximately two hours later, petitioner signed another waiver form, and during the following ten minutes of questioning, confessed to the murder and concealment of the victim's body. Petitioner fails to demonstrate how his second *Miranda* rights waiver was not voluntary, knowing, or intelligently made. Petitioner also argues that, because his IQ is between 52 and 70, he was likely to give a false confession. However, he provides nothing other than this conclusory statement to challenge the admission of his statement. Accordingly, we see no basis to find that the circuit court erred in allowing the jury to hear petitioner's confession.

Second, petitioner argues that there was insufficient evidence for the jury to convict him of first degree murder because the State failed to prove malice or premeditation. He argues that, because the medical examiner determined that the victim's death was by strangulation, there was insufficient time for the death to be premeditated. With respect to malice, or lack thereof, he argues that Ms. Ferris testified that when she dropped her mother off at petitioner's residence on

2

December 30, 2012, nothing seemed wrong and there was no argument between the victim and petitioner at that time.

With respect to the sufficiency of the evidence, we have held as follows:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995). Additionally, we held that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *id.* "To warrant interference with a verdict of guilt on the ground of insufficiency of the evidence, the court must be convinced that evidence was manifestly inadequate and that consequent injustice has been done." *State v. Craft,* 165 W.Va. 741, 748, 272 S.E.2d 46, 51 (1980). Regarding premeditation, we have stated that direct proof thereof is seldom possible and that generally it can be proved only by circumstantial evidence. *See State v. Blevins,* 231 W.Va. 135, 152-53, 744 S.E.2d 245, 262-63 (2013).

Upon our review, the record below does not support petitioner's argument that the State failed to establish premeditation or malice at trial. The jury heard that there had been trouble between petitioner and the victim in the days leading to her death. In addition, the jury heard petitioner's statement to the police that they argued, it escalated, and that he strangled her to death. Finally, petitioner's brother testified that he watched petitioner push the Jeep into the lake. The jury could infer from this evidence that petitioner had sufficient time to form the intent to kill. Accordingly, we find that the evidence was sufficient to sustain the jury's verdict.

Third, petitioner argues that the circuit court gave conflicting instructions on the definition of premeditation. Specifically, he argues that Instruction No. 2, which was offered by the State after the jury requested the definition of premeditation during its deliberation, was inconsistent with our holding in *Guthrie* and conflicted with the circuit court's Instruction No. 7, which was also given to the jury.

3

In Syllabus Points 5 and 6 of *Guthrie,* we held as follows:

5.    Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

6.    In criminal cases where the State seeks a conviction of first degree murder based on premeditation and deliberation, a trial court should instruct the jury that murder in the first degree consists of an intentional, deliberate, and premeditated killing which means that the killing is done after a period of time for prior consideration. The duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate and premeditated design varies as the minds and temperaments of people differ and according to the circumstances in which they may be placed. Any interval of time between the forming of the intent to kill and the execution of that intent, which is of sufficient duration for the accused to be fully conscious of what he intended, is sufficient to support a conviction for first degree murder. To the extent that *State v. Schrader,* 172 W.Va. 1, 302 S.E.2d 70 (1982), is inconsistent with our holding today, it is expressly overruled.

194 W.Va. at 664, 461 S.E.2d at 170.

Petitioner concedes that the circuit court's instruction on premeditation was proper, but contends that it conflicted with State's Instruction No. 2. We disagree. The State's definition of premeditation stated that "in order to constitute a 'premeditated' murder and intent to kill need exist for only an instant." As the State points out in its brief to this Court, the quoted language is taken directly from *Billotti v. Dodrill,* 183 W.Va. 48, 394 S.E.2d 32 (1990), which is still good law. Petitioner fails to demonstrate how the language from *Billotti* is inconsistent with the circuit court's instruction. Accordingly, we see no error with respect to the circuit court's inclusion of State's Instruction No. 2. in its instructions to the jury.

The fourth issue that petitioner raises on appeal is that the State withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). First, he contends that the State failed to produce fingernail clippings that were taken from the victim's body by the medical examiner during the autopsy. Second, he contends that evidence of blood splatters from his and the victim's residence were never tested to determine if the blood belonged to petitioner or some third person. Third, he contends that fingerprints taken from the victim's vehicle were never tested.

Upon our review, we reject petitioner's claimed *Brady* violations. In Syllabus Point 2 of *State v. Youngblood,* 221 W.Va. 20, 650 S.E.2d 119 (2007), we held that

[t]here are three components of a constitutional due process violation under [*Brady v. Maryland*] and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402

4

(1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Petitioner fails to establish any of the three requirements quoted above. He admits that he does not know whether the undisclosed evidence mentioned above would have been exculpatory; he cannot show that the State suppressed it; and he cannot show that the evidence was material such that the nondisclosure prejudiced him at trial.

Fifth, petitioner argues that the State failed to preserve the victim's cellular telephone, the contents of which were reviewed by the investigating officer. Petitioner states that the State never produced the victim's cell phone despite being ordered to do so by the circuit court. He contends that he was not afforded the same opportunity to review the contents of the phone because the phone was "lost."

Insofar as petitioner alleges that the failure to preserve the phone violates our holding in *State v. Osakalumi,* 194 W.Va. 758, 461 S.E.2d 504 (1995), we disagree.[1] Assuming arguendo that the phone would have been subject to disclosure under either the West Virginia Rules of Criminal Procedure or case law and that the State had a duty to preserve the phone, the next question is what consequences should flow from that breach. *See* Syl. Pt. 2, *id.* To this end, we examine "(1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction." *Id.*, in part. Upon our review, we note that the circuit court conducted a pre-trial hearing regarding the phone and learned from the victim's daughter that, after reviewing the contents of the phone with the police, the police returned the phone to her. According to the daughter's testimony, the phone "was a Walmart flip-phone; just one of them pre-paid pay-as-you-go phones," and that the last time it was used was weeks before the murder and there was nothing relevant on the phone. The daughter further explained that poor cell service limited her mother's use of the phone. The police never catalogued the phone as potential evidence; it was not introduced as evidence at trial; and it played no role in the State's case against petitioner. Accordingly, we see no error with regard to the State's failure to preserve the victim's cell phone.

Petitioner's final assignment of error is that he was prejudiced by the cumulative effect of the circuit court's various errors. *See* Syl. Pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) ("Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."). Upon our review, petitioner fails to identify any error, let alone cumulative error sufficient to demonstrate that he was denied a fair trial.

---

[1] Petitioner does not cite or refer to *Osakalumi* in his brief; however, because *Osakalumi* addresses the State's failure to preserve evidence, it is necessary to address petitioner's argument within the context of the case.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  May 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II